```
 1  Kimberly S. Trimble (SBN 288682)
    ktrimble@singletonschreiber.com
 2  SINGLETON SCHREIBER, LLP
 3  591 Camino de la Reina, Suite 1025
    San Diego, California 92108
 4  P: (619) 771-3473
 5  F: (619) 255-1515

 6  Attorneys for Plaintiff
 7
```

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVEN MCGINN, through next friends MARC LEVINSON and BLAKE EATON, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF PRISONS; MERRICK B. GARLAND, in his official capacity as the U.S. Attorney General; U.S. DEPARTMENT OF JUSTICE; COLETTE S. PETERS, in her official capacity as the Director of the Federal Bureau of Prisons; Rear Admiral CHRIS BINA, in his official capacity as the Acting Assistant Director for the Federal Bureau of Prisons Health Services Division; and CATRICIA HOWARD, in her official capacity as the Assistant Director for the Federal Bureau of Prisons Correctional Programs Division. <br><br> Defendants. | CASE NO.  **'22CV1920 BAS  AHG** <br><br> Complaint for declaratory judgment and injunctive relief |

## INTRODUCTION

1. Over twenty years ago, the Supreme Court held that "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999). Institutional isolation is discrimination "in this key respect: In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Id.* at 601.

2. The U.S. Department of Justice ("DOJ") vigorously enforces this antidiscrimination principle. Earlier this year, the DOJ commemorated *Olmstead*'s anniversary with a wave of enforcement actions.[1] Yet the Attorney General and DOJ do not follow *Olmstead*'s antidiscrimination mandate in their own criminal justice work.

3. The Attorney General is responsible for hospitalizing and providing treatment in a suitable facility to people found incompetent before trial. 18 U.S.C. § 4241(d). When he fulfills that responsibility, like Bureau of Prisons, he is subject to the disability antidiscrimination principles articulated in *Olmstead*. *See* 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act). His own regulations subject him to those principles. 28 C.F.R. § 39.130(d).

4. As *Olmstead* explains, what is suitable for one person may not be suitable for another. Some people need full-time hospitalization in a locked facility before their trials. Others need only outpatient mental health programs, long known

---

[1] *See* U.S. Dep't of Justice, *Justice Department Commemorates the Anniversary of Olmstead v. L.C.*, June 22, 2022, https://www.justice.gov/opa/blog/justice-department-commemorates-anniversary-olmstead-v-lc-1.

as "day" or "partial hospitalization" programs.[2]

5. The majority of states recognize that, as a practical matter, and pursuant to *Olmstead*'s anti-segregation principle, incompetent people need not all be institutionalized pretrial. At least thirty states provide outpatient competency evaluation and restoration to people who are otherwise on pretrial release.

6. Yet the Attorney General and the DOJ do not. Instead, they have delegated the task of providing competency evaluation and restoration treatment entirely to the Federal Bureau of Prisons ("BOP")—an agency that provides such services exclusively in inpatient hospitals in federal prisons.

7. Deven McGinn has been found incompetent in a federal criminal case in San Diego. But he is not a danger. He is not at risk of flight. Rather, he has lived independently, on pretrial release, for the last two and a half years. He is still on pretrial release. A court-appointed neuropsychologist recommends that, not only *could* he be evaluated and treated in a non-custodial facility, but also that he *should* be. The psychologist who evaluated him the year before agrees. Given that he must receive evaluation and treatment from the Attorney General, Mr. McGinn wishes to be treated in San Diego, where he can live in his own home.

8. Yet the Attorney General, Department of Justice, Bureau of Prisons, and remaining named defendants will only provide Mr. McGinn with evaluation and treatment as an inmate in a prison hospital, over 2,500 miles away from San Diego. They intend for him to begin treatment at that prison hospital in Federal

---

[2] *See* U.S. Centers for Medicare and Medicaid Services, *Mental health care (partial hospitalization)*, https://www.medicare.gov/coverage/mental-health-care-partial-hospitalization (explaining, "Partial hospitalization provides a structured program of outpatient psychiatric services as an alternative to inpatient psychiatric care. It's more intense than care you get in a doctor's or therapist's office. You get this treatment during the day, and you don't have to stay overnight.").

3
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Medical Center Devens ("FMC Devens") on December 12, 2022.

2      9.    "[T]reating individuals in institutions when they wish to and could be treated in the community *is* discrimination *because of* disability." *Brown v. District of Columbia*, 928 F.3d 1070, 1078 (D.C. Cir. 2019); *accord M.R. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2012).[3] The Attorney General should know that treating Mr. McGinn in a prison hospital, when he wishes to and could be treated in an outpatient facility in San Diego, is discrimination because of disability.

    10.    Mr. McGinn asks this Court to declare that the Attorney General's and named defendants' policy of providing pretrial competency treatment exclusively in prison hospitals is illegal under Section 504 of the Rehabilitation Act and its implementing regulations, and to enjoin the defendants from taking Mr. McGinn into custody for hospitalization and instead hospitalize him in an integrated, medically appropriate outpatient program.

## JURISDICTION AND VENUE

    11.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346 (original jurisdiction). This Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202 *et seq.* The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

    12.    Venue is proper in the Southern District of California because this is an action against an officer, employee, and/or agency of the United States, and a substantial part of the events or omissions giving rise to this action have occurred in this judicial district. *See* 28 U.S.C. § 1391(e)(1).

---

[3] *See, e.g.*, U.S. Department of Justice, *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C.* (Feb. 25, 2020), https://archive.ada.gov/olmstead/q&a_olmstead.htm.

## PARTIES

13. Plaintiff Deven McGinn is a 34-year-old adult who has lived in San Diego for most of the last decade. A federal district court judge has determined that he is not at risk of flight, and he is not a danger to himself or others. Since his early 20s, he has been diagnosed with severe mental illnesses, including schizophrenia, schizoaffective disorder, and bipolar, and a federal district court recently determined his mental illness renders him unable to understand the nature and consequences of the criminal proceedings against him or to assist properly in his defense. Mr. McGinn is thus a qualified person with a disability within the meaning of Section 504 of the Rehabilitation Act.

14. Next friend Marc Levinson is a trial attorney employed by the Federal Defenders of San Diego, Inc., the federal community defender organization for the Southern District of California. In that capacity, Mr. Levinson represents Deven McGinn as his public defender, ethically has a significant relationship with Mr. McGinn, and is dedicated to his interests. He is one of Mr. McGinn's "next friends" pursuant to Federal Rule of Civil Procedure 17(c)(2).

15. Next friend Blake Eaton is a trial attorney employed by the Federal Defenders of San Diego, Inc., the federal community defender organization for the Southern District of California. In that capacity, Mr. Eaton also represents Deven McGinn as his public defender, ethically has a significant relationship with Mr. McGinn, and is dedicated to his interests. Mr. Eaton is one of Mr. McGinn's "next friends" pursuant to Federal Rule of Civil Procedure 17(c)(2).

16. Defendant Federal Bureau of Prisons is the federal agency responsible for the custody and care of all federal inmates following their conviction and sentencing. It is also the federal agency responsible for (i) identifying suitable facilities to provide treatment, competency evaluations, and related services for pretrial federal defendants found incompetent; (ii) contracting with suitable

facilities to provide such treatment, evaluations, and related services; and (iii) providing such treatment, evaluations, and related services. It is an "Executive agency" within the meaning of the Rehabilitation Act and the Department of Justice's implementing regulations. *See* 29 U.S.C. §§ 794 *et seq.*; 28 C.F.R. §§ 39.101 *et seq.*

17. Defendant Colette S. Peters is the Director of the Federal Bureau of Prisons. Director Peters is responsible for the operation of all Bureau of Prisons facilities, regional offices, training centers, contract facilities, reentry management offices, and all related administration. Director Peters is sued in her official capacity.

18. Defendant Rear Admiral Chris Bina is the Acting Assistant Director for the Health Services Division of the Federal Bureau of Prisons. Defendant Bina is responsible for the BOP's delivery of health services, including the staffing and oversight of all employees who provide medical designations and care to people in federal custody. Defendant Bina is sued in his official capacity.

19. Defendant Catricia Howard is the Assistant Director of the Correctional Programs Division of the Federal Bureau of Prisons. Defendant Howard is responsible for the BOP's designations and sentence computations, as well as the oversight of private correctional facilities under contract with the BOP. Defendant Howard is sued in her official capacity.

20. Defendant U.S. Department of Justice is the federal agency that houses the Federal Bureau of Prisons and the U.S. Attorney General. It is an "Executive agency" within the meaning of the Rehabilitation Act and the Department of Justice's implementing regulations. *See* 29 U.S.C. §§ 794 *et seq.*; 28 C.F.R. §§ 39.101 *et seq.*

21. Defendant Merrick Garland is the United States Attorney General. All people found incompetent before trial are committed to the Attorney General's

1  custody. He is responsible by statute for providing incompetent people with
2  treatment at a suitable facility. 18 U.S.C. § 4241(d). He is responsible for an
3  "Executive agency," the U.S. Department of Justice, within the meaning of the
4  Rehabilitation Act and the Department of Justice's own implementing regulations.
5  *See* 29 U.S.C. §§ 794 *et seq.*; 28 C.F.R. §§ 39.101 *et seq.* Defendant Garland is
6  sued in his official capacity.

## FACTUAL ALLEGATIONS

**I.   Mr. McGinn can, will, and should receive treatment in an outpatient day-hospitalization program in the community.**

  **A.   Mr. McGinn manages his illness in outpatient facilities and occasional short inpatient stays.**

22. According to medical records, Deven McGinn began experiencing symptoms of schizophrenia in his early 20s. In the last decade and a half, he has been diagnosed with schizophrenia and schizoaffective disorder, among other mental illnesses.

23. Doctors report that his illness is complicated, persistent, and hard to treat. He experiences delusions. His speech is often disorganized. One of the symptoms of his illness is that he often has poor or no insight into the illness.

24. Mr. McGinn has received psychiatric care mostly in outpatient facilities at the recommendation of his doctors.

25. He has been evaluated by two psychologists in the last two years. On a review of all available medical records, as well as testing and interviews with Mr. McGinn, each psychologist has independently concluded that the most medically appropriate place for Mr. McGinn to receive medical treatment and services is through a non-custodial facility in the San Diego community.

26. Medical records show that Mr. McGinn has needed short-term, full-time inpatient psychiatric care at times. That full-time inpatient care has lasted, at most, a matter of days or weeks at a time. Mr. McGinn has never spent more than

a few weeks at a time in an inpatient psychiatric care facility. The last time a doctor determined he medically needed inpatient psychiatric care was in late 2018. He spent four days in a psychiatric facility before being discharged on the advice of his doctor.

27. Mr. McGinn has no criminal history. He has never spent time in a jail or prison. He is often engrossed in his delusions. However, for the past several years, his delusions have been peaceful, often relating to nature, trees, and birds.

**B. Mr. McGinn has lived on pretrial release in the community uneventfully for the last two and a half years.**

28. In June 2020, Customs and Border Patrol agents detained Mr. McGinn at the San Ysidro Port of Entry. An agent filed a complaint alleging he had driven a car with a little under 8 kilograms of a substance containing methamphetamine into the United States. The agent issued Mr. McGinn a notice to appear in federal court and released him into the United States. *See United States v. Deven McGinn*, No. 20-cr-1944-AJB.

29. Mr. McGinn appeared in federal court at the time written in his notice to appear. A federal magistrate judge appointed him counsel, specifically, the Federal Defenders of San Diego, Inc. The magistrate judge determined that his release would not endanger the safety of any other person or the community. The magistrate judge also determined that a $10,000 personal appearance bond would reasonably assure Mr. McGinn's appearance in federal court.

30. Mr. McGinn was released the same day he first appeared in federal court in June 2020. He has lived in the San Diego community on pretrial release ever since.

31. Mr. McGinn would remain in the community on pretrial release, if not for the Attorney General's and the BOP's choices on how to provide him with competency treatment and evaluation.

32.     Mr. McGinn has appeared for hearings in the case in federal court at least fourteen times while on pretrial release. He has had no further contact or interactions with law enforcement. Other than an early bond modification to account for a drug testing condition the pretrial officer had initially missed, the district court has never modified his bond. It also has not revoked his bond.

33.     At different points throughout the duration of the case, the district court has found that Mr. McGinn should remain on pretrial release in the community, and that he meets the standards for pretrial release under the Bail Reform Act. Even after finding him incompetent, the district court ordered that Mr. McGinn remain on bond in the community until the day the BOP's medical facility has space available for him.

34.     Mr. McGinn lives independently, despite experiencing severe symptoms of mental illness. He now has his own apartment in the San Diego area. With the income he receives for his disability from the Social Security Administration, he is able to feed and clothe himself. He takes public transportation by himself to go to meetings and medical appointments. He schedules medical appointments himself and attends them on his own. He has regularly attended mental health treatment appointments as directed by pretrial services.

35.     Mr. McGinn does not currently have insight into his illness. Even so, he is willing to comply with all court-ordered evaluation and treatment. He has attended all court-ordered mental health treatment appointments required as a condition of his pretrial release for the last two and a half years. During the height of the pandemic, he used a payphone to call in to therapy sessions, using rolls of quarters at a time.

**C.     The district court finds Mr. McGinn incompetent and orders him into the custody of the Attorney General for treatment from a suitable facility.**

36.     In May 2022, the district court appointed a clinical psychiatry

professor at UC San Diego to determine if Mr. McGinn was able to rationally assist his counsel in his defense or understand the nature and consequences of the proceedings against him.

37. The professor and neuropsychologist's medical opinion is that Mr. McGinn does not have capacity to stand trial. In her opinion, Mr. McGinn is unable to adequately assist defense counsel due to symptoms of his mental illness. His disorganized speech and inability to speak about matters other than delusions impact his ability to communicate coherently. Obtaining answers from him is challenging. He has a shallow understanding of court proceedings and personnel.

38. The professor and neuropsychologist also has medical concerns that Mr. McGinn may not be returned to competency in a reasonable amount of time, even with gold-standard, evidence-based treatments. Medically, it is challenging to anticipate how long it would take for his psychotic symptoms to improve to a level that would allow him to rationally assist in his defense and understand the nature and consequences of the proceedings against him.

39. The district court accepted this medical opinion in August 2022. It found Mr. McGinn is presently mentally incompetent due to his mental disease or defect. It ordered that Mr. McGinn remain on bond pending voluntary self-surrender to a specific facility within the Bureau of Prisons. It committed Mr. McGinn to the custody of the Attorney General. Mr. McGinn is thus now, technically, in the custody of the Attorney General.

**D. The Bureau of Prisons decides to provide competency evaluation and restoration services for Mr. McGinn in a federal prison hospital.**

40. The last two psychologists to evaluate Mr. McGinn have each independently determined that a non-custodial treatment facility is the most medically appropriate hospital setting for Mr. McGinn to receive competency evaluation and restoration treatment.

41. In fall 2021, a clinical and forensic psychologist's medical opinion was that there are community-based programs that would meet Mr. McGinn's needs. She recommended an evidence-based approach such as assertive community treatment, a particular form of partial hospitalization. She explained that such treatment is available through a number of different programs within San Diego County. It involves a multi-disciplinary team of professionals working together to support an individual with severe mental illness as they remain in the community. That team should include, in her medical opinion, a case manager, psychiatrist, social worker, vocational specialist, and substance abuse treatment specialists.

42. In summer 2022, the court-appointed psychologist's medical opinion was that the most medically appropriate setting for competency evaluation and restoration would be a private, non-custodial competency restoration facility. Non-custodial services would be less stressful for Mr. McGinn, and thus less likely to further exacerbate his mental illness. Non-custodial services would be medically better and likely more evidence-based for Mr. McGinn's specific psychiatric needs, including cognitive behavioral therapy for psychosis, social skills training, illness management and recovery, and cognitive rehabilitation.

43. As she explained, competency restoration services within a Federal Bureau of Prisons facility could be harmful toward Mr. McGinn's recovery. Given that he is not a danger to himself or others, there is not a strong argument to be made for providing restoration services within a BOP facility.

44. In August 2022, Mr. McGinn provided this report to the Bureau of Prisons through counsel. Through counsel, he asked the BOP and the Attorney General to reasonably accommodate his disability, and place him in the most integrated setting possible, by providing him treatment through a non-custodial competency restoration program in Southern California. The reasonable

accommodation request described his illness, his ability and willingness to attend community-based treatment if required to do so, and the medical appropriateness of such treatment. It offered further discussion with counsel, as well as indicated openness to other accommodation ideas.

45. Counsel for the BOP responded the following day, writing simply, "The BOP cannot accommodate your request."

46. Instead, the Bureau of Prisons informed Mr. McGinn that it would provide him competency evaluation and restoration services as an inmate in FMC Devens. It scheduled for him to arrive at the prison on December 12, 2022.

47. FMC Devens is a prison. It is characterized by regimented activities. All inmates can only move between assigned areas at certain times, pursuant to the prison's "controlled movement system." All inmates must stay silent during the five or six "count times" conducted each day. Inmates are given approximately 22 minutes to eat a meal. Every item every inmate possesses must be authorized, with a record of receipt. All inmates can, at any time, be subject to an unannounced and random pat search, visual search, or search of their assigned living space. Inmates must wear identification cards at all times when they are not in their assigned cells.[4]

48. All inmates at FMC Devens, including those in the inpatient medical center unit, are subject to restrictive conditions designed for people serving sentences of criminal punishment. All inmates at the facility cannot leave. They are locked in. They have a limited number of visitors and visits per month. By design, all inmates are isolated from their communities.

49. FMC Devens is about forty miles north of Boston, Massachusetts. It is over 2,500 miles away from San Diego. From San Diego, FMC Devens is one

---

[4] Bureau of Prisons, *FMC Devens: Inmate Admission & Orientation Handbook*, https://www.bop.gov/locations/institutions/dev/; https://www.bop.gov/locations/institutions/dev/DEV_aohandbook.pdf

of the farthest facilities the BOP operates in the continental United States.

## II. The Attorney General and the Bureau of Prisons could keep and treat Mr. McGinn in the community, in line with medical recommendations and antidiscrimination law.

50. The Attorney General, the Bureau of Prisons, and each named defendant could choose to hospitalize Mr. McGinn and people like him in partial hospitalization programs. It would be legal. It would be cheaper. It would be—as two psychologists have explained in Mr. McGinn's case—medically appropriate.

51. Instead, unlike the majority of states, and contrary to Department of Justice's own regulations, the named defendants have chosen to institutionalize everyone found incompetent before trial, regardless of whether they are living in the community on pretrial release, and regardless of individual circumstances.

52. Partial hospitalization programs have existed in the United States since the 1950s. They have been common and available for the last half-century. Today, more than one-third of all metropolitan hospitals provide partial hospitalization programs.[5] There are a number of partial hospitalization programs available in the San Diego region.

53. Also known as day hospitalization programs, partial hospitalization programs provide structured intensive outpatient mental health care. They allow for participants to engage freely in community activities—like traveling in and through public spaces, working, and going to school—as well as the simple activities of independent living—cooking and eating their chosen foods at their chosen times, shopping where they want, spending social time with who they want, and sleeping in their own bed.

54. As explained in recent medical literature, partial hospitalization

---

[5] *See* Sudhakar Madakasira, *Psychiatric partial hospitalization programs: What you need to know*, 21 Current Psychiatry 28, 28–29 (2022), https://cdn.mdedge.com/files/s3fs-public/CP02102028.PDF.

programs are an important, less-segregated alternative to inpatient hospitalization. They "[d]iscourage[] the excessive dependency and dehumanization that may develop during inpatient hospitalization," and "[a]llow the patient to maintain . . . independent activities they are capable of."[6]

55. Partial hospitalization programs cost substantially less than inpatient programs.

56. The Attorney General, Bureau of Prisons, and remaining named defendants have the authority and ability to provide Mr. McGinn with medical evaluation and treatment at an outpatient hospitalization program while he is in their custody.

57. As Judge Watford recently explained, "Congress specifically authorized the Attorney General to 'contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to'" the federal incompetency scheme. *United States v. Donnelly*, 41 F.4th 1102, 1109 (9th Cir. 2022) (Watford, J., concurring in the judgment) (quoting 18 U.S.C. § 4247(i)(A)). As a result, "[e]ven when the BOP itself lacks available bed space, it can contract with another entity to hospitalize defendants committed to the Attorney General's custody." *Id.*

58. The Attorney General's, Bureau of Prisons', and remaining named defendants' choice to institutionalize Mr. McGinn violates Mr. McGinn's rights under the essential antidiscrimination principles of Section 504 of the Rehabilitation Act. But for their choice to evaluate and treat Mr. McGinn in a prison hospital, rather than a partial hospitalization program, Mr. McGinn would remain in the community on pretrial release. By forcing Mr. McGinn into a

---

[6] *Id.* at 30.

segregated institution when there are cheaper, closer, more integrated, and more medically appropriate treatment alternatives, the named defendants have harmed and will harm Mr. McGinn. They have violated, and will continue to violate, disability discrimination law.

59. Mr. McGinn has asked the Bureau of Prisons to modify its policies to allow him to receive treatment in the most integrated setting possible, to no avail.

60. In light of his pending institutionalization, scheduled at FMC Devens on December 12, 2022, Mr. McGinn has no choice but to bring this lawsuit.

## CAUSES OF ACTION

### COUNT I
**The named defendants' choice to evaluate and treat Deven McGinn in a prison hospital rather violates the *Olmstead* integration mandate of Section 504 of the Rehabilitation Act**

61. Mr. McGinn incorporates by reference the allegations set forth in each paragraph of this Complaint.

62. Congress enacted Section 504 of the Rehabilitation Act "to share with [disabled] Americans the opportunities . . . that other Americans take for granted." *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 278 (1987) (quoting 123 Cong. Rec. 13515 (1977) (statement of Sen. Humphrey). It found that disability "in no way diminishes the right of individuals to . . . enjoy full inclusion and integration into the economic, political, social, cultural, and educational mainstream of American society." 28 U.S.C. § 701.

63. To further that goal, Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability by any Executive agency. 29 U.S.C. § 794(a). It provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." *Id.*

64. Because multiple doctors have diagnosed him with schizophrenia, a district judge has found him unable to assist in his defense and understand the nature and consequences of criminal proceedings against him, and he has been ordered into the custody of the Attorney General for evaluation and treatment under 18 U.S.C. § 4241(d), Deven McGinn is a qualified individual with a disability within the meaning of Section 504. 29 U.S.C. § 705(9), (20) (incorporating by reference 42 U.S.C. § 12102).

65. Defendants Attorney General, Department of Justice, and Bureau of Prisons are Executive agencies within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the remaining named defendants are responsible for the programs and activities of Executive agencies within the meaning of the statute, *id.* The Attorney General's and named defendants' competency treatment and restoration programs, and activities with regard to Mr. McGinn's competency treatment and restoration, are "program[s]" and "activit[ies]" within the meaning of the statute. *Id.*

66. The Department of Justice has issued regulations to effectuate Section 504's requirement that it not discriminate on the basis of disability. 28 C.F.R. § 39.101. The regulations apply to "all programs or activities conducted by the agency." 28 C.F.R. § 39.102; *see* 28 C.F.R. §§ 39.101 *et seq.* The agency includes the Bureau of Prisons and all named defendants.

67. The Department of Justice's regulations provide that "[t]he agency shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 39.130(d). As explained by regulations regarding the Americans with Disabilities Act that are "co-extensive" with Section 504, "'the most integrated setting' is the one that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." *M.R. v. Dreyfus*, 697 F.3d 706, 733 (9th Cir. 2012)

(quoting 28 C.F.R. Part 35, App. B (2011)).

68. The Attorney General, Department of Justice, Bureau of Prisons, and named defendants have violated and continue to violate Section 504 and its implementing regulations by refusing to administer their competency programs and activities in the most integrated setting appropriate to Mr. McGinn's needs. As explained by Supreme Court case law, Ninth Circuit case law, DOJ regulations, and DOJ technical guidance, a decision to provide treatment and services to a person only in an institution when that person could be treated in the community violates Section 504 of the Rehabilitation Act.

69. Defendants' violation has caused, and will continue to cause, ongoing harm to Deven McGinn. He is at risk of being institutionalized in a prison hospital on December 12, 2022, when it would be more integrated, cheaper, and more medically appropriate to receive hospitalization, treatment, and services in the community.

**COUNT II**
**The named defendants' refusal to reasonably modify their competency treatment and hospitalization program violates the reasonable accommodation and meaningful access mandate of Section 504 of the Rehabilitation Act**

70. Plaintiffs incorporate by reference the allegations set forth in each paragraph of this Complaint.

71. When enacting Section 504 of the Rehabilitation Act, "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 297, 295 (1985). As a result, under Section 504, "an otherwise qualified handicapped individual must be provided with meaningful access" to government programs and activities. *Id.* at 301.

72. "[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* at 301. As explained in *Olmstead*, it is discrimination to deny reasonable accommodations that avoid segregation "in this key respect: in order to receive needed medical services, persons with mental disabilities must, because of their disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Olmstead*, 527 U.S. at 601.

73. The Attorney General, Department of Justice, Bureau of Prisons, and named defendants have violated and continue to violate Section 504 and its implementing regulations by refusing to provide Mr. McGinn with any reasonable accommodations to their competency restoration and treatment activities that would allow him to stay in the community. Mr. McGinn requested the reasonable accommodation of being provided treatment in a partial hospitalization program in Southern California, or, in the alternative, any other reasonable accommodation proposal. The Bureau of Prisons, acting on behalf of itself and named defendants, refused to provide the requested accommodation or propose an alternative. Instead, it responded simply, "The BOP cannot accommodate your request."

74. Defendants' violation of Section 504's mandate to provide reasonable accommodations in its programs and activities has caused, and will continue to cause, ongoing harm to Deven McGinn. He is at risk of being institutionalized in a prison hospital on December 12, 2022, when it would be more integrated, cheaper, and more medically appropriate to receive hospitalization, treatment, and services in the community.

## REQUEST FOR RELIEF

Pursuant to the foregoing causes of action, Plaintiff Deven McGinn, through next friends Marc Levinson and Blake Eaton, prays that judgment be rendered in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

favor of Plaintiff, and against Defendants, for the following relief:

    a.    On all causes of action, declare that the federal government's policy of not providing outpatient hospitalization options for individuals who are being criminally prosecuted while on bond and are placed in competency proceedings violates the Rehabilitation Act;

    b.    On all causes of action, enjoin Defendants and all of their officers, employees, agents, and anyone acting in concert with them from holding Deven McGinn in any inpatient hospital setting solely in an effort to restore his competency for his criminal proceedings without first evaluating whether outpatient hospitalization is the most integrated treatment setting;

    c.    On all causes of action, that reasonable attorney fees be awarded pursuant to 505(b) of the Rehabilitation Act (29 U.S.C. 794a(b));

    d.    Costs of suit;

    e.    Any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

Dated: December 6, 2022        Respectfully submitted,

*s/* Kimberly S. Trimble
Kimberly S. Trimble
Attorneys for Plaintiff Deven McGinn, through next friends Marc Levinson and Blake Eaton

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF